ADRIÁN, MARÍA LUISA y MARGARITA MERCADO RIERA, peticionarios, *v.* CORTE DE DISTRITO DE PONCE, HON. HÉCTOR RUIZ SOMOHANO, JUEZ, demandada; MARIO MERCADO RIERA, interventor.

Núm. 1836.—*Sometido:* Junio 9, 1950. *Resuelto:* Agosto 4, 1950.

*José A. Poventud,* abogado de Adrián y Margarita Mercado Riera; *Celestino Iriarte Miró* y *F. Fernández Cuyar,* abogados de María Luisa Mercado Riera; *Rafael Rivera Zayas, Benjamín Ortiz* y *Pedro M. Porrata,* abogados del interventor.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Mario Mercado Montalvo falleció en Ponce el 22 de agosto de 1937 bajo testamento ológrafo en que designó albacea a su hijo Mario Mercado Riera. No obstante haber terminado el albaceazgo en 1ro. de septiembre de 1939 [1], éste continuó en posesión de cuantiosos bienes pertenecientes al caudal relicto del finado. En 6 de marzo de 1940 Mario Mercado Riera radicó ante la Corte de Distrito de Ponce las "Cuentas Finales del Albacea de la Herencia de Don Mario Mercado Montalvo, Don Mario Mercado Riera, a marzo 4, 1940, rendidas a los Herederos y Sujetas a Cuentas Supletorias." En esas cuentas finales figuraban egresos y bajas por un total de $733,994.52, e ingresos por un total de $772,864.30, así como efectivo disponible en los bancos ascendente a $107,159.38 y egresos entrados por contabilidad, pendientes de pago, montantes a $68,289.60, quedando de dicho efectivo un remanente disponible de $38,869.78. Los herederos Adrián Mercado Riera y María Luisa Mercado Riera de Belaval radicaron poco después una oposición a las cuentas finales. Luego de una prolongada vista, la Corte de Distrito de Ponce dictó en 19 de febrero de 1942 una Resolución o Auto Definitivo, fundados en extensa relación

---

[1] Véase *Mercado* v. *Corte,* 62 D.P.R. 368, confirmado en 152 F.2d 86; *certiorari* denegado en 328 U. S. 837, 90 L. ed. 1612.

del caso, opinión y resoluciones. En dicha Resolución o Auto la corte inferior hizo en síntesis las siguientes modificaciones y alteraciones:

(A) En relación con la partida titulada "Casa Marina Núm. 23" ordenó al cuentadante restituir al activo de la cuenta final la suma de $11,234.16, con intereses legales al 6 por ciento anual desde el 29 de febrero de 1940;

(B) Rebajó en $56.66 la partida "Contribuciones Pagadas";

(C) Rebajó en la suma de $16,392.25 la partida titulada "Intereses Pagados....$36,100.64";

(D) De la partida "Pagos hechos de plazos vencidos e Intereses de Legatarios" rebajó, en relación con la legataria Humbelina Ventura la suma de $125.35; y $2,102.98 de la partida "Sobre Dispendio Innecesario de Intereses, etc.";

(E) Ordenó una rebaja de $2,052.14 de la partida "Pagos de Rentas por Pensiones Vitalicias";

(F) De las partidas "Gastos de Viaje y Extras a Estados Unidos del Cuentadante y Pedro M. Porrata (abogado)" ordenó una rebaja de $23,500;

(G) De la partida "Gastos de Conservación, Misceláneos y Administrativos, etc." ordenó una rebaja de $10,664.95;

(H) De la partida "Honorarios del Albacea" ordenó una rebaja de $7,208.11;

(I) La partida "Contribución de Herencia e Intereses" fué rebajada en $33,471.44;

(J) Ordenó la restitución de la partida de $325.81 titulada "Libreta Núm. 2281";

(K) Ordenó que el cuentadante pusiera en la cuenta final la suma de $428,600.33 en lugar de $413,064.63, que aparece en la cuenta final como "Crédito del Causante contra la Sociedad Mario Mercado e Hijos"; y que hiciera figurar en la cuenta final la cantidad de $6,841.06 en lugar de $4,942.04 que en dicha cuenta aparece como "Beneficios" del causante por un mes y 22 días, correspondiente al año 1937 a 1938.

Ordenó además al cuentadante la restitución de las par-
tidas mencionadas más arriba bajo las letras "A" a "J", e
hizo constar que "Las que preceden son todas las modifica-
ciones y alteraciones que hace la corte a la cuenta final pre-
sentada por el albacea Mario Mercado Riera; quedando por
la presente, aprobada, con las modificaciones y alteracio-
nes que se dejan especificadas, la cuenta final presentada
por el albacea Mario Mercado Riera con fecha marzo 4 de
1940." Hizo constar asimismo que "Por el presente auto de-
finitivo, la corte dispone que, con arreglo a derecho y justi-
cia, se adjudique el sobrante que resultare en dinero o fincas,
entre las personas con derecho a la herencia, o sean los cua-
tro herederos testamentarios nombrados Mario, Marga-
rita, (²) Adrián y María Luisa Mercado Riera, después de
satisfechas las deudas del finado Mario Mercado Montalvo y
cubiertos los gastos de la administración." Finalmente hizo
constar que hacía "formar parte de la presente resolución
o auto definitivo todas y cada una de las resoluciones que
aparecen dictadas separadamente en la 'Relación del Caso,
Opinión y Resoluciones' radicadas en el día de hoy, . . .",
todo ello "sin especial condenación de costas."

El cuentadante Mario Mercado Riera apeló para ante
este Tribunal en 2 de marzo de 1942 en tanto en cuanto en
el auto definitivo se declaró con lugar la oposición a las
partidas indicadas en dicha sentencia con las letras A, B,
C, D, E, F, G, H, I, J, K, así como por no estar conforme
con todos y cada uno de los pronunciamientos adversos
dictados en dicha sentencia. En igual fecha apelaron para
ante nos del referido auto los opositores Adrián y María
Luisa Mercado Riera de Belaval "en cuanto no se declaró
con lugar, *in toto*, las restituciones y/o reclamaciones objeto
de las impugnaciones marcadas con los números II, IV,
VII(*a*) y (*c*), IX, X y XI de la oposición original, y con las
letras A, D, E y F de la oposición adicional." Apelaron los

---

(²) La heredera Margarita Mercado Riera aparentemente ha per-
manecido neutral en todo este largo procedimiento.

opositores igualmente "del pronunciamiento referente a la adjudicación del sobrante que resultare en 'dinero o fincas', en cuanto no se limita al dinero o fondos comprendidos en la cuenta final impugnada", así como de no haberse impuesto "al apelado Mario Mercado Riera las costas y honorarios de abogados de los apelantes."

Visto el recurso en apelación, en 8 de mayo de 1946 este Tribunal dictó una sentencia cuyos pronunciamientos pueden sintetizarse así:

1. En relación con la partida (b) "honorarios de abogado, $18,000", ordenó al cuentadante reintegrar al caudal la suma de $10,500;

2. Revocó la resolución recurrida en cuanto por la misma se ordenó al cuentadante restituir al activo la cantidad de $325.81;

3. Modificó la resolución y ordenó al cuentadante que hiciera figurar en su cuenta final la suma de $428,633 en lugar de la de $413,064.63 originalmente consignada, pero autorizándole a la vez a llevar al pasivo de la cuenta final "la suma que, de acuerdo con la liquidación practicada por el Tesorero y los comprobantes que el albacea debe tener en su poder, hubiere sido pagada al Tesoro Insular por contribuciones sobre ingresos adeudadas por el testador en la fecha de su fallecimiento."

4. Revocó la resolución recurrida en cuanto por ésta se ordenó al cuentadante que "ponga en su cuenta final la cantidad de $6,481.06", y aprobó la partida de $4,942.04 consignada por el cuentadante en la cuenta final por concepto de beneficios del causante por un mes y 22 días del año 1937 a 1938.

5. Revocó la resolución de la corte inferior en cuanto a la partida titulada "Ayuda a Insolventes", montante a $5,721.52, y ordenó al cuentadante que reintegrara dicha suma al activo del caudal.

6. Revocó la resolución de la corte inferior declarando no tener jurisdicción para aprobar o desaprobar la partida

titulada "A Adrián Mercado Jiménez—$3,550" que aparece en las cuentas finales bajo el rubro "Pagos hechos de Plazos Vencidos e Intereses de Legatarios", y aprobó dicha partida como pago hecho al tutor Mario Mercado Riera, como primer plazo e intereses de los $10,000 donados por los cuatro herederos al menor Adrián Mercado Jiménez.

7. Revocó la resolución de la corte inferior en tanto en cuanto ésta se declaró sin jurisdicción para resolver si el cuentadante debía o no incluir en el activo de su cuenta final la suma de $45,359.50, que se alega fuera prestada por el testador a la Sociedad Mario Mercado e Hijos, ordenándose en su lugar a dicho cuentadante que incluyera el alegado crédito en el inventario y en las cuentas finales del albaceazgo.

8. Revocó la resolución de la corte inferior en tanto en cuanto ésta declaró sin lugar la solicitud de los opositores para que se incluyera en las cuentas finales la suma de $5,250 que figura en los libros de Mario Mercado e Hijos bajo el título "Fondo Panteón de Familia" ordenándose en su lugar al cuentadante que incluyera en el activo del caudal la suma de $2,625 o sea la mitad del Fondo Panteón de Familia que corresponde a los cuatro herederos.

9. Modificó la resolución recurrida en el sentido de limitar sus efectos a la distribución del sobrante que resultare, entre los herederos, en dinero o en créditos o derechos de acción que no hubieren sido ya adjudicados por virtud del contrato transaccional. [3]

Así modificado, el auto definitivo dictado por la corte inferior fué confirmado por este Tribunal sin especial condenación de costas. [4] Solicitada reconsideración, la misma fué declarada sin lugar. *Mercado* v. *Mercado*, 66 D. P.R. 811.

[3] En 9 de septiembre de 1938 los herederos otorgaron un contrato de transacción. Al mismo se hace referencia extensamente en la opinión emitida por este Tribunal en *Mercado* v. *Corte*, 62 D.P.R. 368, 373.

[4] La extensa opinión emitida por este Tribunal en apoyo de su sentencia de 8 de mayo de 1946 puede hallarse en *Mercado* v. *Mercado*, 66 D.P.R. 38.

Tanto el cuentadante como los opositores apelaron de nuestra sentencia para ante el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito. El primero, de todas las adjudicaciones que en nuestra sentencia le fueron adversas, y los opositores, en tanto en cuanto nuestra sentencia (1) fijó los honorarios del albacea en la suma de $7,500; (2) concedió a éste la suma de $3,049 como ex-albacea extrajudicial; y (3) aprobó la partida de $3,550 pagada al tutor Mario Mercado Riera como parte de un legado hecho a Adrián V. Mercado Jiménez.

Por opinión dictada en 9 de abril de 1948 [5] la Corte de Apelaciones de los Estados Unidos para el Primer Circuito confirmó sumariamente nuestra sentencia. *Mercado Riera* v. *Mercado Riera*, 167 F.2d 207. El Tribunal Supremo de Estados Unidos declaró no haber lugar a un auto de *certiorari* solicitado por el cuentadante (335 U.S. 825), y a solicitud de los opositores el "mandate" fué retenido por la Corte de Apelaciones hasta el 10 de agosto de 1948.

Recibido el "mandate" por la Corte de Distrito de Ponce, en 22 de noviembre de 1948 el cuentadante acudió ante dicha corte con un escrito intitulado "Enmienda a la Cuenta Final del Albaceazgo de Don Mario Mercado Montalvo, presentada a Marzo 4, 1940 y titulada 'Cuentas Finales del Albacea de la Herencia de Don Mario Mercado Montalvo, Don Mario Mercado Riera, a Marzo 4 de 1940, rendidas a los Herederos y Sujetas a Cuentas Supletorias' y consignación de cantidades; todo en cumplimiento de la sentencia de la Corte de Distrito de Ponce de 19 de febrero de 1942, subsiguientemente modificada y así confirmada por la Corte Suprema de Puerto Rico en 14 de enero de 1947", acompañando al mismo sendos cheques por $13,679.51 en favor de Margarita Mercado Riera; $30,699.73 a favor de María Luisa Mercado Riera, y $30,699.73 a favor de Adrián Mercado

---

[5] En abril 13 de 1948 dicho Tribunal declaró sin lugar la reconsideración solicitádale.

Riera.([6]) Al siguiente día, o sea en 23 de noviembre de 1948, la corte inferior ordenó que los referidos cheques "en satisfacción de las obligaciones que a dichas personas (el cuentadante) debía pagar conforme a la sentencia recaída en este procedimiento" fueran sustituídos por uno solo expedido a favor del secretario, a fin de que el depósito de ese dinero se ajustara a lo dispuesto por el Reglamento de Contabilidad de las cortes de distrito. El cuentadante así lo hizo, depositando en corte un cheque certificado por la suma de $75,078.97 a favor del referido funcionario. Solicitada por los opositores reconsideración de la ameritada orden de 23 de noviembre de 1948, radicado por éstos posteriormente un "escrito interesando libramiento de ejecución de sentencia firme en este procedimiento" y luego de otros incidentes que para no alargar más esta opinión no mencionaremos en detalle, la corte inferior en 9 de enero de 1950 dictó una extensa resolución declarando con lugar la "moción de enmienda y consignación del cuentadante", ordenando a éste la restitución en efectivo de la suma de $125.35 anticipada a Humbelina Ventura, con intereses a partir del 10 de agosto de 1948 hasta la fecha de la consignación del depósito en la secretaría, y declarando sin lugar la moción de los opositores. Acudieron entonces éstos ante nos con una solicitud de certiorari. Alegan en ella, en síntesis, que en la cuenta rendida por Mario Mercado Riera al 4 de marzo de 1940 se consignaron algunas partidas como efectivamente pagadas y otras cargadas por contabilidad, por un montante estas últimas de $68,289.60; que el balance en efectivo de $107,159.38, por razón de los $68,289.60 cargados por contabilidad, quedó reducido a un sobrante disponible de $38,869.78; que de los referidos $68,289.60 la corte de distrito de Ponce, en su auto definitivo de 19 de febrero de

---

([6]) De la suma total consignada, ascendente a $75,078.97, la cantidad de $3,705.90 se suponía corresponder a intereses desde el 10 de agosto de 1948, fecha hasta la cual la Corte de Apelaciones retuvo el "mandate" a instancias de los opositores.

1942, ordenó la restitución de cuatro partidas indebidamente cargadas por contabilidad, por un total de $17,820.77 ([7]) juntamente con el sobrante disponible en dinero de $38,869.78; que todas las cortes han decretado la restitución de los $17,820.77 indebidamente cargados por contabilidad, así como de los $38,869.78 del sobrante disponible, o sea, un total de $56,690.55; que el interventor-cuentadante pretendiendo que con ello satisfacía lo realmente adeudado en virtud de la sentencia, con sus intereses legales, se anticipó a radicar ante la Corte de Distrito de Ponce el 22 de noviembre de 1948 un escrito, calificado por él de enmienda a la cuenta final al 4 de marzo de 1940, y a depositar insuficientemente la cantidad de $75,078.97, suma ésta que no incluía la restitución de las partidas indebidamente cargadas por contabilidad ascendentes a $17,820.77, ni los $38,869.78 del sobrante disponible; que tampoco pagó los intereses sobre todas las partidas restituíbles desde el 19 de febrero de 1942 (fecha del auto definitivo dictado por la Corte de Distrito) hasta el día en que se presentó la llamada enmienda a la cuenta final, limitándose a computar los intereses legales sobre el fallo confirmado solamente por un período de tres meses doce días, o sea, desde el 10 de agosto de 1948 (cuando expiró el término para la retención del mandato solicitado por los opositores) al 22 de noviembre de 1948, en que se presentó por el cuentadante la aludida enmienda a la cuenta final, y depositándose para cubrir tales intereses la cantidad de $3,705.90. Alegaron finalmente los opositores en su petición que la corte a quo cometió error al negarse a

---

([7]) Las cuatro partidas fueron las siguientes:

| | |
|---|---|
| 1. Gastos extras del Lic. Porrata | $1,450.00 |
| 2. Cargado en exceso para los contadores Rivera y Díaz | 1,080.00 |
| 3. Indebidamente cargado para Ochoteco y Zapater | 8,082.66 |
| 4. Excesivamente cargado como remuneración para el ex albacea | 7,208.11 |
| Total | $17,820.77 |

decretar el pago de los $17,820.77 y de los $38,869.78 ya referidos y al negarles el derecho a recibir intereses legales desde el 19 de febrero de 1942 hasta el completo pago de todas las partidas decretadas a su favor. A tenor de lo solicitado, expedimos un auto de certiorari.

El interventor-cuentadante nos pide nos declaremos sin jurisdicción para revisar el caso por la vía especial de certiorari alegando, entre otras cosas, que la resolución del tribunal inferior es una final y, por ende, apelable; y que siéndolo (como lo ha sido) no procede la revisión de la misma mediante el procedimiento extraordinario de certiorari, no teniendo esta Corte jurisdicción para ello de acuerdo con lo preceptuado por la sección 40 de la Carta Orgánica de Puerto Rico, la que creó una congelación de los procedimientos en las cortes de justicia de esta Isla. Es innecesario que discutamos con amplitud las cuestiones así suscitadas, ya que las mismas han sido resueltas adversamente a la contención del interventor-cuentadante tanto por este Tribunal como por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito. Véanse *Pérez* v. *Tribunal*, 69 D.P.R. 4, y *Mercado Riera* v. *Mercado Riera*, 152 F.2d 86, 93.

Entramos ahora de lleno en las cuestiones planteadas por la petición de certiorari. Como se ha visto, éstas son el no haber la corte inferior decretado el pago de la suma total de $56,690.55 ni el de los intereses legales desde el 19 de febrero de 1942 hasta el completo pago de todas las partidas decretadas a favor de los peticionarios.

Es innegable que ha habido adjudicación por los tribunales respecto al sobrante en efectivo ascendente a $107,159.38, sobre los egresos por contabilidad pendientes de pago montantes a $68,289.60, y sobre las cuatro partidas indebidamente cargadas por contabilidad ascendentes a $17,820.77. Incuestionable es también que a virtud de esa adjudicación la cantidad total a ser restituída por el cuentadante como diferencia entre los $107,159.38 y las partidas que figuran como egresos por contabilidad pendientes de

pago, más el importe de las mencionadas cuatro partidas, es de $56,690.55. Empero, a virtud de esa adjudicación ¿viene ahora el cuentadante en la obligación de reintegrar a los peticionarios la parte que de dichos $56,690.55 a éstos corresponde, más sus intereses? Tomando en consideración todas las circunstancias que han concurrido en el caso, esta pregunta debe a nuestro juicio ser contestada en la negativa.

Se recordará que en el testamento ológrafo otorgado por Mario Mercado Montalvo, causante tanto del interventor como de los aquí peticionarios, aquél designó albacea a su hijo Mario Mercado Riera con relevación de fianza, "extendiéndole el término de un año que dice la ley a todo el término que fuese necesario para cumplir su cometido." Fué precisamente a virtud de la designación héchale en ese testamento que el interventor cuentadante tomó posesión de los bienes dejados por su causante. Esa posesión la tuvo, por tanto, de acuerdo con la ley. Llevada a la Corte de Distrito de Ponce la cuestión relativa a la duración del albaceazgo, dicha corte resolvió que éste no había aún terminado. Dictada esa sentencia, la posesión del cuentadante continuó ajustándose a derecho. En 14 de julio de 1943, este Tribunal resolvió en apelación que el albaceazgo había terminado en septiembre 1ro. de 1939, anuló la resolución dictada por la Corte de Distrito de Ponce en marzo 24 de 1943 y decretó que debía dictarse otra ordenando al ex albacea Mario Mercado Riera que procediera a entregar los bienes del caudal a todos los herederos de Mario Mercado Montalvo, en cumplimiento del contrato transaccional de septiembre 9 de 1938, y asimismo que rindiera una cuenta suplementaria desde octubre 27 de 1941 en que rindió la anterior, hasta la fecha de dicha entrega, para todo lo cual se le concedió un término de sesenta días. Se apeló para ante la Corte de Apelaciones del Primer Circuito de los Estados Unidos y esa sentencia nuestra fué confirmada en 23 de noviembre de 1945. *Mercado Riera* v. *Mercado Riera*, 152 F.2d 86.

Mientras se sustanciaba la apelación el cuentadante siguió en posesión de los bienes, rindiendo en el ínterin cuentas supletorias en que figuran los $107,159.38 que como sobrante en efectivo hizo figurar en las cuentas finales rendidas a marzo 4 de 1940. De ello tenemos conocimiento. Siendo ello así, no es posible ordenar al presente al cuentadante que restituya a los peticionarios la diferencia entre dicho sobrante y los egresos no contabilizados, más el monto de las cuatro partidas indebidamente cargadas. De ordenarse la restitución de esa diferencia, se estaría cometiendo una grave injusticia, ya que por un lado el cuentadante tendría que satisfacer a sus coherederos la parte correspondiente de los $56;690.55, y por otro lado se haría caso omiso del hecho de que el cuentadante al llevar esa diferencia a las cuentas supletorias lo ha hecho de acuerdo con la ley y acatando nuestro fallo, y de que hasta el presente no ha habido adjudicación definitiva por los tribunales de dichas cuentas supletorias. No debe, por tanto, ordenarse en este momento la restitución a los peticionarios de la parte que les corresponde de la partida total de $56,690.55.

Ahora, bien, en lo que concierne a la alegación de los peticionarios al efecto de que tienen derecho a percibir intereses legales desde el 19 de febrero de 1942 (fecha del auto definitivo) hasta el completo pago de todas las partidas decretadas en favor de ellos, empezaremos por decir que no es menester que determinemos en términos generales si el auto definitivo dictado por una corte de distrito aprobando las cuentas finales rendidas por un albacea o administrador, es una sentencia divisible o indivisible. De lo que no hay duda a nuestro juicio es de que tal auto definitivo equivale a una sentencia final. Tampoco la hay de que contra el mismo podrá interponerse recurso de apelación. Artículo 590 del Código de Enjuiciamiento Civil, edición de 1933.

La Corte de Distrito de Ponce al sometérsele a su consideración las cuentas finales al 4 de marzo de 1940, hizo adjudicación de todas y cada una de las partidas objeto de

las mismas, dictando en el curso de su opinión y dentro de ésta sendas resoluciones al efecto. Además, en su auto definitivo ella especificó separadamente las partidas sujetas a modificaciones y alteraciones y al final del auto, conforme ya hemos indicado, hizo constar que aprobaba las cuentas finales presentadas con dichas modificaciones y alteraciones. Este Tribunal también consideró separadamente todas y cada una de las partidas objeto de las cuentas finales y en su sentencia hizo adjudicación separada e independiente respecto a las que debía revocar o modificar en alguna forma, y confirmó con las modificaciones así hechas el auto definitivo de la corte inferior. Nuestra sentencia, según ya hemos indicado, fué confirmada sumariamente por el tribunal apelativo. Ha habido, pues, adjudicación definitiva por varios tribunales sobre las partidas envueltas en las cuentas finales, considerándolas independientemente y dictaminando sobre todas y cada una de ellas individual y separadamente. Bajo estas circunstancias, llegamos a la conclusión de que en este caso, siendo las distintas partidas envueltas separables y divisibles, el auto definitivo dictado por la Corte de Distrito de Ponce en relación con las cuentas finales rendidas por el aquí interventor equivalió a una sentencia divisible. (⁸)

Ya hemos indicado que en relación con los inmuebles hubo un contrato transaccional entre el aquí interventor y los demás herederos. (⁹) Las cuentas finales sometidas por el interventor-cuentadante se referían a las cantidades recibidas por éste y a los pagos ya efectuados por él o pendientes de efectuarse. El auto definitivo que en relación con tales cuentas dictó la corte inferior fué uno para el pago de dinero. Cierto es que en dicho auto la corte no hizo constar específicamente que el cuentadante debía pagar intereses so-

---

(⁸) Véase también *Vidal* v. *Monagas*, 66 D.P.R. 924, 926; Cf. *Martinó* v. *Santisteban Chavarri & Co.*, 53 D.P.R. 297, 301; *Cosme* v. *Márquez*, 49 D.P.R. 783, 788; *Franceschi* v. *Corte*, 45 D.P.R. 666, 677.

(⁹) Véase la nota 3.

bre todas aquellas cantidades que él venía obligado a pagar a los demás herederos. Tal obligación de su parte, sin embargo, era obvia. El artículo 341 del Código de Enjuiciamiento Civil provee que "El secretario incluirá en el registro de la sentencia, los intereses correspondientes a la misma desde la fecha en que se dictó, . . ." y la sección primera de la Ley 5 de 17 de agosto de 1933 (Ses. Ext., pág. 27), dispone "que a falta de un contrato previo escrito, el tipo de interés . . . con ocasión de un fallo o sentencia que no se haya cumplido, será de seis (6) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, . . . ." Interpretando esos preceptos de ley hemos dicho que "tales intereses por disposición expresa de ley formaban parte integrante de la sentencia y podían ser recobrados" no obstante el hecho de que en la sentencia así no se hiciera constar y a pesar del hecho de que "el secretario al registrarla tampoco los incluyó." *Padilla* v. *Vidal*, ante pág. 517 y casos en él citados; *Franceschi, Ex parte*, 53 D.P.R. 75.

 Sostiene, sin embargo, el interventor-cuentadante que no obstante los anteriores preceptos de ley y nuestras decisiones sobre el particular, él no viene obligado a pagar semejantes intereses, ya que habiendo los opositores apelado del auto definitivo dictado por la Corte de Distrito de Ponce y de la sentencia dictada por nosotros y siendo la sentencia una integridad, la no ejecución del auto fué motivada no sólo por las apelaciones por él entabladas, sino también por las interpuestas por los aquí peticionarios, y que siendo ello así no viene él obligado a pagar intereses sino desde el día 10 de agosto de 1948, fecha en que expiró el término concedido a los opositores por la Corte de Apelaciones de los Estados Unidos para retener el mandato, ya que las partes no tienen derecho alguno a intereses por el término durante el cual sus respectivos recursos de apelación estuvieron pendientes. *Concepción* v, *Latoni*, 63 D.P.R. 693, 697. La sentencia no era, sin embargo, una integridad. Hemos dicho que resultaba ser divisible. Los opositores solamente apelaron para

ante este Tribunal Supremo de una parte específica del auto definitivo. Apelaron igualmente para ante la Corte de Apelaciones de los Estados Unidos de parte específica de la sentencia dictada por nosotros. Del auto definitivo dictado por la corte de distrito apelaron para ante este Tribunal (1) en cuanto el mismo no declaró con lugar, *in toto*, las resoluciones y otras reclamaciones objeto de las impugnaciones marcadas (por ellos) con los números II, IV, VII (*a*) y (*c*), X y XI de la oposición original, y con las letras A, D, E y F de la oposición adicional; (2) del pronunciamiento referente a la adjudicación del sobrante que resultare "en dinero o fincas, en cuanto no se limita al dinero o fondos comprendidos en la cuenta final impugnada;" y (3) en tanto en cuanto el auto definitivo no impuso las costas y honorarios de abogado al cuentadante. ([10])

En vista de lo anterior, llegamos a la conclusión de que el interventor-cuentadante debe pagar intereses legales a los aquí peticionarios a razón del 6 por ciento anual, sobre las partidas adjudicadas a favor de éstos (excepción hecha de los $56,690.55), en la siguiente forma:

1. Sobre todas aquellas partidas que figuran en las cuentas finales rendidas por el interventor-cuentadante al 4 de marzo de 1940, que fueron aprobadas, con o sin modificaciones o alteraciones, por la Corte de Distrito de Ponce a virtud de su auto definitivo, que no fueron en forma alguna objeto de las apelaciones interpuestas por los opositores y

---

([10]) Las impugnaciones a que se refería el escrito de apelación de los opositores fueron las siguientes:

Impugnación II—Entrada de egresos denominada "Ayuda a Insolventes" $5,721.52;

Impugnación IV—Becas a Estudiantes Pobres—$10,176.79;

Impugnación VII—Pagos hechos de plazos vencidos e intereses de legatarios por un total de $86,250;

(*a*) Si de la cuarta parte satisfecha del principal de los legados no se ha descontado o cargado el importe de la contribución hereditaria e intereses correspondientes a cada legatario (excepción hecha del donatario Adrián V. Mercado Jiménez) así como el total de las cantidades que, sin intervención de los opositores fueron anticipadas a algunos de los legatarios; se impugna también la cantidad pagada a la legataria Humbelina Ventura; y

que no fueron modificadas o revocadas por nosotros, el acreedor cuentadante pagará intereses a los aquí peticionarios desde el 19 de febrero de 1942 hasta la fecha de la consignación en corte de dichas partidas;

2. Sobre todas aquellas partidas que fueron objeto de la apelación interpuesta por los opositores para ante este Tribunal contra el auto definitivo dictado por la Corte de Distrito de Ponce, el interventor-cuentadante pagará a los aquí peticionarios intereses, según dichas partidas pudieron ser confirmadas, modificadas o alteradas por nosotros, desde el día 8 de mayo de 1946—fecha en que este Tribunal dictó sentencia modificando y confirmando el auto definitivo— hasta el día de la consignación en corte de dichas partidas, excepción hecha de aquellas partidas que fueron objeto de la apelación entablada por los propios opositores para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito;

3. Sobre las partidas objeto de la apelación interpuesta por los opositores para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito el cuentadante pagará intereses desde el 10 de agosto de 1948—fecha en que expiró el término solicitado por ellos para que dicha corte retuviera el mandato—hasta el día de la consignación ·de dichas partidas en la corte inferior;

4. Sobre aquellas partidas modificadas o alteradas por este Tribunal a virtud de la apelación entablada para ante

(c) La cantidad de $3,550 que en las cuentas finales se consigna como pagada al legatario Adrián V. Mercado Jiménez;

X—$20,000 fijados para gastos de administración, honorarios de peritos contables, etc.

XI—Honorarios del albacea $10,257.41;

(A)—$45,359.50 no incluídos en las cuentas del albaceazgo como crédito del causante.

(D)—Egresos para legalizar el cobro de ciertas pólizas de seguro y el no haberse hecho figurar el importe de tales pólizas, ascendentes a no menos de $7,689.20;

(E)—Cierto beneficio pendiente de pago por el Bazar Atocha;

(F)—Crédito en favor de la sucesión, titulado "Fondo Panteón Familia", ascendente a $5,250.

nos por el cuentadante, éste pagará intereses al tipo indicado, según dichas partidas fueron modificadas por nosotros, desde el 19 de febrero de 1942—fecha del auto definitivo— hasta que las mismas se consignen en la corte inferior.

Desde luego, cuanto decimos más arriba en relación con el pago de intereses se refiere tan sólo a aquellas partidas que a virtud de la adjudicación ya hecha y al recibirse el mandato de la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, el cuentadante venía obligado a restituir y ha consignado ya en la corte a quo, ascendentes a $71,373.07. Sobre el importe de esas partidas no parece haber controversia alguna. No obstante, dada la conclusión a que llegamos más arriba sobre los $56,690.55, no es posible condenar al cuentadante al pago de intereses hasta tanto haya una resolución final en torno a las cuentas supletorias.

*Debe anularse la resolución recurrida dictada por la Corte de Distrito de Ponce con fecha 9 de enero de 1950 en la causa civil 782 intitulada "Mario Mercado Riera, cuentadante, v. Adrián, María Luisa y Margarita Mercado Riera, opositores, sobre cartas testamentarias", y devolverse el caso a dicha corte para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Snyder no intervino.