ADRIÁN, MARÍA LUISA y MARGARITA MERCADO RIERA, peticionarios, *v.* CORTE DE DISTRITO DE PONCE, HON. HÉCTOR RUIZ SOMOHANO, JUEZ, demandado; MARIO MERCADO RIERA, interventor.

Núm. 1836.—*Sometido:* Febrero 8, 1951. *Resuelto:* Marzo 8, 1951.

*José A. Poventud,* abogado de Adrián y Margarita Mercado Riera; *Celestino Iriarte Miró* y *F. Fernández Cuyar,* abogados de María Luisa Mercado Riera; *Rafael Rivera Zayas, Benjamín Ortiz* y *Pedro M. Porrata,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Con fecha 4 de agosto de 1950 emitimos una opinión en el recurso del epígrafe, (¹) cuyos párrafos finales textualmente copiados leen así:

"En vista de lo anterior, llegamos a la conclusión de que el interventor-cuentadante debe pagar intereses legales a los aquí peticionarios a razón del 6 por ciento anual, sobre las partidas adjudicadas a favor de éstos (excepción hecha de los $56,690.55), en la siguiente forma:

1. Sobre todas aquellas partidas que figuran en las cuentas finales rendidas por el interventor-cuentadante al 4 de marzo de 1940, que fueron aprobadas, con o sin modificaciones o alteraciones, por la Corte de Distrito de Ponce a virtud de su auto definitivo, que no fueron en forma alguna objeto de las apelaciones interpuestas por los opositores y que no fueron modificadas o revocadas por nosotros, el acreedor cuentadante pagará intereses a los aquí peticionarios desde el 19 de febrero de 1942 hasta la fecha de la consignación en corte de dichas partidas;

"2. Sobre todas aquellas partidas que fueron objeto de la apelación interpuesta por los opositores para ante este Tribunal contra el auto definitivo dictado por la Corte de Distrito de Ponce, el interventor-cuentadante pagará a los aquí peticionarios intereses, según dichas partidas pudieron ser confirmadas, modificadas o alteradas por nosotros, desde el día 8 de mayo de 1946—fecha en que este Tribunal dictó sentencia modificando y confirmando el auto definitivo—hasta el día de la consignación en corte de dichas partidas, excepción hecha de aquellas partidas que fueron objeto de la apelación entablada por los propios opositores para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito;

"3. Sobre las partidas objeto de la apelación interpuesta por los opositores para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito el cuentadante pagará intereses desde el 10 de agosto de 1948—fecha en que expiró el término solicitado por ellos para que dicha corte retuviera el mandato— hasta el día de la consignación de dichas partidas en la corte inferior;

---

(¹) Véase *Mercado* v. *Corte y Mercado, Interventor,* 71 D.P.R. 789.

"4. Sobre aquellas partidas modificadas o alteradas por este Tribunal a virtud de la apelación entablada para ante nos por el cuentadante, éste pagará intereses al tipo indicado, según dichas partidas fueron modificadas por nosotros, desde el 19 de febrero de 1942—fecha del auto definitivo—hasta que las mismas se consignen en la corte inferior.

"Desde luego, cuanto decimos más arriba en relación con el pago de intereses se refiere tan sólo a aquellas partidas que a virtud de la adjudicación ya hecha y al recibirse el mandato de la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, el cuentadante venía obligado a restituir y ha consignado ya en la corte a quo, ascendentes a $71,373.07. Sobre el importe de esas partidas no parece haber controversia alguna. No obstante, dada la conclusión a que llegamos más arriba sobre los $56,690.55, no es posible condenar al cuentadante al pago de intereses hasta tanto haya una resolución final en torno a las cuentas supletorias."

De la sentencia dictada en armonía con la opinión así emitida tanto los opositores como el interventor cuentadante nos piden la reconsideración. Nos referimos primeramente a la moción radicada a tal efecto por los opositores y discutiremos en el curso de esta opinión las cuestiones por ellos planteadas en el orden en que lo han sido, a saber:

En primer lugar sostienen los opositores que "procede reconsiderar el fallo para que el pago o ejecución de cuantías ya adjudicadas a favor de los recurrentes por todos los tribunales en un total de $56,690.55, no quede impedida o subordinada a resultancias inciertas de otro pleito, no iniciado aún, sobre cuenta supletoria posterior, distinta e impugnada."

· Hemos leído con el mayor detenimiento y atención todos los razonamientos aducidos por los opositores en apoyo de este motivo de reconsideración y a nuestro juicio el mismo no procede. Conforme dijimos en nuestra opinión de 4 de agosto ya citada:

"Mientras se sustanciaba la apelación el cuentadante siguió en posesión de los bienes, rindiendo en el ínterin cuentas supletorias en que figuran los $107,159.38 que como sobrante en efectivo hizo figurar en las cuentas finales rendidas a marzo 4

de 1940. De ello tenemos conocimiento. Siendo ello así, no es posible ordenar al presente al cuentadante que restituya a los peticionarios la diferencia entre dicho sobrante y los egresos no contabilizados, más el monto de las cuatro partidas indebidamente cargadas. De ordenarse la restitución de esa diferencia, se estaría cometiendo una grave injusticia, ya que por un lado el cuentadante tendría que satisfacer a sus coherederos la parte correspondiente de los $56,690.55, y por otro lado se haría caso omiso del hecho de que el cuentadante al llevar esa diferencia a las cuentas supletorias lo ha hecho de acuerdo con la ley y acatando nuestro fallo, y de que hasta el presente no ha habido adjudicación definitiva por los tribunales de dichas cuentas supletorias. No debe, por tanto, ordenarse en este momento la restitución a los peticionarios de la parte que les corresponde de la partida total de $56,690.55."

Un estudio ulterior de la cuestión nos convence de que lejos de reconsiderar nuestro criterio anterior es nuestro deber ahora ratificarnos en el mismo.

 En segundo lugar alegan los opositores que "Igualmente procede reconsiderar o aclarar el punto de que en cuanto a las restituciones 'casa Marina Núm. 23, $11,734.16' e 'Intereses Pagados, $16,392.25,' el interés legal debe computarse desde el 29 de febrero y 4 de marzo de 1940, respectivamente, fechas anteriores a la sentencia." Les asiste la razón a este respecto, pues del auto definitivo dictado por la Corte de Distrito de Ponce en 19 de febrero de 1942 claramente aparece que los intereses legales sobre las dos partidas indicadas deben ser pagados por el cuentadante desde las fechas respectivas antes mencionadas. Fué una inadvertencia de nuestra parte no hacerlo constar así en nuestra opinión.

Como tercer motivo de su moción los opositores insisten en que "asimismo debe reconsiderarse el fallo en el sentido de que el interés legal ha de satisfacerse hasta la fecha del pago incondicional y completo de la sentencia definitiva y no hasta el 22 de noviembre de 1948, fecha de la consignación parcial."

Recibido el "mandate" en la corte inferior, con fecha 22 de noviembre de 1948 el cuentadante radicó allí un escrito intitulado "Enmienda a la Cuenta Final del Albaceazgo de Don Mario Mercado Montalvo, presentada a marzo 4, 1940, y titulada 'Cuentas Finales del Albacea de la Herencia de Don Mario Mercado Montalvo, Don Mario Mercado Riera, a marzo 4 de 1940 rendidas a los herederos y sujetas a Cuentas Supletorias' y Consignación de Cantidades; todo en cumplimiento de la sentencia de la Corte de Distrito de Ponce de 19 de febrero de 1942, subsiguientemente modificada y así confirmada por la Corte Suprema de Puerto Rico en 14 de enero de 1947." Con ese escrito el cuentadante acompañó sendos cheques por $13,679.51 en favor de Margarita Mercado Riera, $30,699.73 a favor de María Luisa Mercado Riera y $30,699.73 a favor de Adrián Mercado Riera, substituyéndose los mismos al siguiente día por el cuentadante con un solo cheque por $75,078.97, siguiendo órdenes del tribunal. En relación con ese escrito del cuentadante los opositores en 3 de enero de 1949 radicaron otro "Escrito Interesando Libramiento de Ejecución de Sentencia Firme en este Procedimiento", en el que, luego de hacer constar que la cantidad que debió ser depositada por el cuentadante debió ascender en total a $231,210.63, suplicaban de la corte ordenara al Secretario librar sendos cheques a favor de los acreedores por sentencia por $30,697.73 para María Luisa Mercado Riera, $30,697.73 para Adrián Mercado Riera, y por $13,679.51 para Margarita Mercado Riera, o sea por un total de $75,078.97, que era el importe parcial consignado por el cuentadante o deudor por sentencia, Mario Mercado Riera, debiendo entenderse que dicha cantidad lo era para abonar a cuenta o en pago parcial de la suma total de $185,228.35. (La diferencia entre $231,210.63 y $185,228.35 se suponía corresponderle al cuentadante en su carácter de heredero del causante). Posteriormente los mismos opositores radicaron una "Réplica a la oposición presentada por el cuentadante" y en ella reiteraron su súplica de que

se expidieran los tres cheques que acabamos de mencionar y una vez más hicieron constar que la cantidad total depositada por el cuentadante ascendente a $75,078.97 debía entregárseles para abonar a cuenta o en pago parcial de la suma total que por concepto de capital e intereses hasta el 3 de enero de 1949 correspondía a dichos tres acreedores por sentencia. Discutida ampliamente ante la corte inferior tanto la Moción sobre Consignación de Cantidad del cuentadante como los dos escritos de los opositores a que nos hemos referido, dicha corte en 9 de enero de 1950 dictó una extensa resolución en la cual declaró con lugar la moción de enmienda y consignación del cuentadante, ordenándole, sin embargo, que restituyera en en efectivo al caudal hereditario la suma de $125.35 por concepto de anticipo de legado a Humbelina Ventura, que a su juicio había sido pagada indebidamente, con intereses a partir del 10 de agosto de 1948 hasta la fecha de la consignación del depósito en la Secretaría de la corte inferior, para lo cual concedió al cuentadante un término de diez días; declaró a la vez sin lugar por improcedente la moción de los opositores en que reclamaban la entrega de una cantidad mucho mayor y ordenó al Secretario que una vez consignada por el cuentadante la suma de $125.35 anteriormente mencionada, procediera a satisfacer a los herederos opositores la cantidad depositada en la proporción correspondiente a cada uno de ellos. En cumplimiento de la anterior resolución el cuentadante depositó en efectivo en la Secretaría de la corte siete días más tarde la cantidad de $100.23, para cubrir los $125.35 ya mencionados, con sus intereses hasta enero 16 de 1950, menos la parte correspondiente al cuentadante como heredero.

No hay duda de que si bien el cuentadante depositó la suma total de $75,078.97 con el propósito de satisfacer el monto total del auto definitivo dictado por la Corte de Distrito de Ponce en 19 de febrero de 1942, según el mismo había sido modificado y confirmado en apelación, sin embargo, la consignación de dicha cantidad no ha sido hasta ahora declarada bien hecha.

Siendo ello así a tenor de lo provisto por el artículo 1134 del Código Civil, edición de 1930, (²) no ha quedado, por tanto, extinguida la obligación. Empero, según ya hemos dicho, los opositores reiteradamente solicitaron de la corte inferior la entrega de la suma total así consignada, aunque haciendo constar que debían expedirse cheques por las cantidades que a cada uno de ellos correspondía como pago parcial de sus acreencias respectivas contra el cuentadante, y en su resolución de 9 de enero de 1950, como se ha visto, la corte inferior ordenó a su Secretario que expidiera sendos cheques por las sumas respectivas a que antes se ha hecho mención. Por tanto, desde el 16 de enero de 1950—fecha en que se consignaron los $100.23—el dinero ha estado a la disposición de los opositores. Si hasta ahora no han recibido la parte que a cada uno de ellos corresponde en la suma total depositada ello ha sido porque no han querido recibirla. Nada ha habido que lo impida. El hecho de que el cuentadante se haya opuesto a la entrega de esa cantidad en pago parcial de lo adeudado, no significa en modo alguno que a cada opositor no haya podido entregársele la parte que le corresponde en la suma total depositada. Sin que con tal recibo parcial quedara extinguida la deuda que por concepto de intereses con ellos pudiera tener el cuentadante con motivo del auto definitivo de 19 de febrero de 1942, según el mismo fué modificado y confirmado, los opositores pudieron incuestionablemente recibir las cantidades respectivas que les correspondían y seguir litigando en relación con cualesquiera derechos que pudieran tener por razón de tal auto definitivo. En su consecuencia, es improcedente que se condene al cuentadante a pagar intereses legales hasta la fecha del pago incondicional y completo de la sentencia definitiva. Desde luego, en vez de pagar tales intereses hasta el 22 de no-

---

(²) Este artículo provee:

"Hecha debidamente la consignación, podrá el deudor pedir al tribunal o juez que mande cancelar la obligación.

"Mientras el acreedor no hubiere aceptado la consignación, o no hubiere recaído la declaración judicial de que está bien hecha, podrá el deudor retirar la cosa o cantidad consignada, dejando subsistente la obligación."

viembre de 1948, fecha de la consignación parcial, los mismos deberán pagarse hasta el 16 de enero de 1950, día en que en armonía con la resolución dictada por la corte inferior se depositaron también los $100.23 ya mencionados y en que el Secretario de la Corte inferior estuvo en posición de expedir sendos cheques en favor de los tres opositores.

En cuarto lugar los opositores sostienen que "la forma de computar el interés legal resultante de la decisión debe ser aclarada o simplificada en varios de sus extremos." Nuestra opinión a este respecto es completamente clara y no vemos motivo alguno para que la reconsideremos. Al discutir este motivo los opositores sostienen que debe eliminarse toda referencia al 10 de agosto de 1948. No estamos de acuerdo. De los autos aparece que los propios opositores solicitaron de la Corte de Apelaciones para el Primer Circuito la retención del mandato hasta el 10 de agosto de 1948 y que dicha corte declaró con lugar la referida moción y ordenó la retención del "mandate" hasta nueva orden de la corte. Cierto es que en 2 de junio del indicado año ellos dirigieron una carta al Secretario de aquella corte, informándole que habían decidido acatar la decisión de aquel tribunal y desistir de su plan original de acudir por *certiorari* a la Corte Suprema de Estados Unidos. Sin embargo, de los autos no se desprende que dicha corte dictara providencia alguna en relación con esa carta.

Finalmente, y como quinto fundamento de su moción de reconsideración, insisten los opositores en que "es indispensable modificar la decisión revocatoria para que de una vez este Tribunal dicte la resolución final que debió emitir la Corte de Distrito, con los pronunciamientos de reconsideración o aclaración interesados." Al discutir este motivo los opositores hacen constar que "lo que se desea es que, en bien de la justicia, no quede la ejecución o pago sujeto a nuevos procedimientos o cuestiones de interpretación que, como las ya señaladas, pueden ser debidamente aclaradas y definitivamente resueltas dentro de la reconsideración solicitada por los peticionarios."

No olvidamos, desde luego, que el causante del cuentadante y de los opositores falleció en 22 de agosto de 1937 y que desde entonces éstos han estado litigando ante distintos tribunales en relación con el caudal hereditario dejado por aquél. Aunque de ordinario en recursos de certiorari anulamos la resolución o sentencia que da lugar a la expedición del mismo, o al convencernos de que fué un error librarlo anulamos el auto expedido, tomando en consideración lo alegado por los opositores y el conocimiento pleno que tenemos de lo mucho que se ha dilatado la liquidación de este caudal hereditario, creemos realmente que en bien de la justicia debemos dictar la sentencia que a nuestro juicio debió haber dictado el tribunal inferior. Así lo haremos. *Cf. Fernández* v. *Corte*, 71 D.P.R. 161; *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4, 17.

La moción de reconsideración del cuentadante apenas merece ser discutida y muy bien podría ser declarada sin lugar en su totalidad. Ésta es, en primer lugar, al efecto de que en el curso de nuestra opinión dijimos en el párrafo tres de la misma que los opositores habían apelado, entre otras, de la partida Núm. IX y que más tarde al hacer referencia nuevamente a las partidas apeladas por los opositores omitimos mencionar esa partida. A este respecto tiene razón el cuentadante.

Los demás fundamentos de su moción son que los opositores no tienen derecho a intereses en cuanto a las partidas apeladas por ellos mismos; que aún si el cuentadante apeló de algunas partidas él no debe pagar intereses en torno a dichas partidas en la corte inferior si los opositores apelaron de esas mismas partidas; que en cuanto a muchas de las partidas apeladas por el cuentadante ya éste había consignado en corte el pago de las mismas y por tanto no procede el pago de intereses adicionales después de la consignación; y que debemos determinar si el auto definitivo dictado por una corte de distrito aprobando las cuentas finales de un albacea o administrador constituye una sentencia divisible o indivisible. A nuestro juicio la opinión nuestra cubre plena y acertadamente

las cuestiones así planteadas por la moción de reconsideración del cuentadante.

*Nuestra sentencia de 4 de agosto de 1950 será reconsiderada y dejada sin efecto y en su lugar se dictará otra en armonía con lo antes expuesto.*

El Juez Asociado Sr. Negrón Fernández se inhibió.