70 N.J. Super. 96 (1961)
175 A.2d 247
C. HERBERT HYMAN, PLAINTIFF-RESPONDENT,
v.
SUN INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided October 27, 1961.
*97 Before Judges KILKENNY, HERBERT and COLLESTER.
Mr. Vincent A. Vitiello argued the cause for appellant (Messrs. Dreskin & Vitiello, attorneys).
Mr. Herbert Horn argued the cause for respondent (Messrs. Lloyd, Horn, Megargee & Steedle, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff sued in the Superior Court, Law Division, to recover on a standard form fire insurance policy, with extended coverage, in the amount of $10,000, issued by the defendant insurance company in favor of the plaintiff on December 17, 1959 for a period of one year, covering the Wiltshire Hotel at 170 South Virginia Avenue, Atlantic City, New Jersey. Plaintiff had paid the premium of $414.85. The insured building, worth far in excess of the policy, was totally destroyed by fire on March 23, 1960. The defendant refused to pay the fire loss, contending that the plaintiff did not have an insurable interest in the property at the time of the loss.
There were a motion and a cross motion for summary judgment supported by affidavits on behalf of the respective parties. On the hearing of these motions, counsel for *98 the parties agreed that there were no issues of fact. Plaintiff's motion was granted and defendant's motion was denied, the trial court holding that the plaintiff did have an insurable interest at the time of the loss. The defendant appeals from this judgment. The sole issue before us is whether the plaintiff had an insurable interest.
The following are the undisputed facts. Prior to the purchase of the insurance policy, the plaintiff had performed services as a broker in the sale of the subject premises from Frank Moss and Eva Moss to Wiltshire, Inc. On September 8, 1959 title closing involving the premises took place at the Chelsea Title and Guaranty Company in Atlantic City. Daniel Bell, Jr. was the attorney for the sellers and also for the Boardwalk National Bank of Atlantic City. The Mosses took back a real and chattel purchase money mortgage in the amount of $357,200 from Wiltshire, Inc. At the same closing, the Mosses obtained a loan from the Boardwalk National Bank in the amount of $180,000 and assigned the purchase money mortgage to the Bank as security for that bank loan.
Also at the closing of September 8, 1959, Frank and Eva Moss, being indebted to the plaintiff, assigned to him a certain payment of $10,000 to be made on July 15, 1960 under the aforesaid purchase money mortgage. This assignment expressly recited that it was made "without recourse." There were three payments of $10,000 each scheduled by the mortgage to be made in July of 1960, namely, on July 10, 1960, July 15, 1960 and July 25, 1960. The Boardwalk National Bank, under the terms of the Moss loan, was not to be paid the $10,000 payment due on July 15, 1960, but it was understood among the interested parties that plaintiff would receive that payment under the assignment to him.
Plaintiff's assignment was not recorded by him until April 1, 1960, about nine days after the fire mentioned above. The loan in the sum of $180,000 made by the Boardwalk National Bank to the Mosses was paid in full on June 14, 1960.
*99 Defendant's brief states the question involved in these words:
"Does a person who received an assignment of a payment to become due out of a certain mortgage, not having received any legal assignment of the mortgage or any part thereof, have an insurable interest under a fire insurance policy?"
Before answering that specific question, we state some general legal principles.
The law is clear that, in order to recover on a fire insurance policy, the insured must have had an insurable interest in the property insured at the time of the fire loss. Conversely, when no such insurable interest existed, there is no right of recovery. Flint Frozen Foods v. Firemen's Insurance Co. of N.J., 8 N.J. 606 (1952); Royal Insurance Co. Ltds. v. Smith, 77 F.2d 157 (9 Cir. 1935). As stated in Motion Picture Co. of America v. Scottish Union & National Insurance Co. of Edinburgh, 244 Pa. 358, 90 A. 642 (Pa. Sup. Ct. 1914), without an insurable interest, "insurance would soon become a mere system of gambling. Sweeney v. Franklin Fire Insurance Co., 20 Pa. 337."
It is also fundamental that one may have an insurable interest in property without any necessity of being the absolute owner thereof. Thus, in the following cases it was held that the insured had an insurable interest: Sussex County Mutual Insurance Co. v. Woodruff, 26 N.J.L. 541 (E. & A. 1857)  a mortgagee or an assignee of a mortgagee or any legal or equitable lien holder; The Franklin Fire Insurance Company v. Martin, 40 N.J.L. 568 (Sup. Ct. 1878)  a party in possession under a contract; Trade Insurance Co. v. Barracliff, 45 N.J.L. 543 (E. & A. 1883)  a husband with an inchoate right of curtesy; Wiley v. Morris, 39 N.J. Eq. 97 (Ch. 1884)  a trustee's interest in property; Lawrence v. Union Insurance Co., 80 N.J.L. 133 (Sup. Ct. 1910)  the interest of both a mortgagor and a mortgagee; Kozlowski v. The Pavonia Fire Insurance Co., 116 N.J.L. 194 (E. & A. 1936)  an equitable title or *100 interest; Flint Frozen Foods, Inc. v. Firemen's Insurance Co. of N.J., supra  a creditor holding warehouse receipts as collateral security.
The Flint Frozen Foods, Inc. case, supra, states the general rule as follows (8 N.J., at p. 612):
"A mortgagee, pledgee, or other person having merely a security interest or having less than complete ownership in the property may now safely take out a fire insurance policy in his own name covering the property in which he has an interest without his claim on the policy being defeated by the existence of other interests in the insured property."
In Farmers Mutual Fire Insurance Co. v. Pollock, 52 Ga. App. 603, 184 S.E. 383, 386 (Ct. App. 1936), the rule is phrased in these words:
"It is sufficient if the insured holds such a relation to the property that its destruction by fire would result in pecuniary loss to him. `The test of insurable interest in property is whether insured has such a right, title or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence or suffer a direct pecuniary loss from its destruction or injury by the peril insured against.'" (Emphasis supplied)
Comparable language has been used in Getchell v. Mercantile & Mfgrs. Mutual Fire Insurance Co., 83 A. 801 (Maine Sup. Jud. Ct. 1912); Aktiebolaget etc. v. Hanover Fire Insurance Co., 211 App. Div. 608, 208 N.Y.S. 173, 211 (App. Div. 1925), reversed on other grounds, 241 N.Y. 197, 149 N.E. 830 (Ct. App. 1925); Crossman v. American Insurance Co. of Newark, 198 Mich. 304, 164 N.W. 428, L.R.A. 1918A, 390 (Sup. Ct. 1917); 4 Appleman Insurance Law and Practice, sec. 2123, pages 21 and 22. Williams v. Roger Williams Insurance Co., 107 Mass. 377, 379, 9 Am. Rep. 41, 43-44 (Sup. Jud. Ct. 1871), states:
"* * * it is now well established that even one who has no title, legal or equitable, in the property, and no present possession or right of possession thereof, yet has an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction."
*101 Upon the broad principles set forth in the foregoing cases, it seems clear that the plaintiff did have an insurable interest in this property. He had taken an assignment of a mortgage payment without recourse. That meant that he could not hold the assignor personally liable on the contract of assignment. It was in the assignee's interest if the mortgaged premises continued to exist because of the presumption that the mortgage payment would have been made. He was subject, therefore, to a risk of suffering a pecuniary loss if the mortgaged premises were destroyed.
While the plaintiff in taking an assignment of the $10,000 mortgage payment due on July 15, 1960 did not receive an instrument legally assigning to him a part of the mortgage security, it is well established in the law that an assignment of a debt, if not limited in its scope, carries with it the promises and undertakings connected therewith and tending to secure its payment. N.J. Trust Co. v. Sussex County Distillery Co., 3 N.J. 156 (1949); Federal Reserve Bank of Philadelphia v. Welch, 122 N.J. Eq. 90 (Ch. 1937); Westville Land Co. v. Handle, 112 N.J.L. 447 (Sup. Ct. 1934); Wooley v. Moore, 61 N.J.L. 16 (Sup. Ct. 1897). The rule is an old one, as witness the following expression in Batesville Institute v. Kauffman, 18 Wall. 151, 85 U.S. 151, 21 L.Ed. 775 (1873):
"Again: No principle is better settled than this, that an assignment of a debt carries with it an assignment of a judgment or mortgage by which it is secured. If a part only of the debt is assigned, a pro tanto portion of the security follows it."
The Batesville case was referred to in Hijos v. Commis, 322 U.S. 465, 470, 64 S.Ct. 1118, 88 L.Ed. 1396 (1943). See, too, 59 C.J.S. Mortgages, § 357, p. 507; Stevenson and Woodruff v. Black, 1 N.J. Eq. 338 (Ch. 1831); Speer v. Whitfield, 10 N.J. Eq. 107, 111 (Ch. 1854).
The fact that the Mosses made an assignment of the $357,200 real and chattel mortgage to the Boardwalk National Bank to secure their loan of $180,000 did not preclude *102 the assignment of the $10,000 payment to the plaintiff. It is clear that the assignment to the bank was only a security transaction and that the Mosses still retained an equity in the mortgage over and above the amount of the loan and the sums to grow due thereon. This is demonstrated further by the fact that the loan was subsequently paid off on June 14, 1960, thus requiring a reassignment of the mortgage by the bank to the Mosses.
Accordingly, we agree with the conclusion of the trial court that the plaintiff had an insurable interest in the property destroyed by fire and was entitled to be paid the amount of the policy.
The judgment is affirmed.